United States District Court
Southern District of Texas
**ENTERED**
July 06, 2020
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CONSOLIDATED WEALTH HOLDINGS, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-19-4437 |
| SANDRA VINCENT and KYLE O'NEAL, | § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Arbitration is supposed to resolve disputes faster and cheaper than litigation. Sometimes, it does. But when, as here, the parties must litigate not merely whether to arbitrate, but who (arbitrator or court) will make that decision, costs and delays escalate. The Supreme Court may resolve some of the issues that currently make the gateway determinations hard to resolve quickly and accurately. *See Henri Schein, Inc. v. Archer & White Sales, Inc.*, 935 F.3d 274 (5th Cir. 2019), *cert. granted*, 2020 WL 3146679 (U.S. June 15, 2020) (No. 19-963). But, after consulting with the parties, and because it is unclear that the Court will address the issue raised in this case, this court declines to add the lengthy delay of waiting for the Court to rule. So here goes.

Sandra Vincent and Kyle O'Neal brought securities-fraud claims against Consolidated Wealth Holdings, Inc., and other defendants, in a class-action arbitration. Consolidated Wealth sued in this court for a declaratory judgment as to whether its arbitration agreement permits class-action arbitrations. Vincent and O'Neal moved to dismiss, arguing that this court lacks subject-matter jurisdiction and that the arbitration agreement delegates the class-arbitrability question to the arbitrator. Consolidated Wealth responded, and the defendants replied. The court heard oral argument on the motion and ordered the parties to submit additional briefs.

Based on the applicable law, the parties' briefs, and the arguments of counsel, the court grants the defendants' motion to dismiss.  This case is stayed and administratively closed pending the arbitration decisions.  The reasons for this ruling are explained in detail below.

## I.    Background

Consolidated Wealth Holdings, Inc., Consolidated Wealth Management, Ltd., Coordinated Wealth Management, LLC, Granite Financial, Inc., and John Spalding, provide investment opportunities involving "life settlements."  A life settlement is an investment in which a life-insurance policy owner sells his policy to a third party, such as Consolidated Wealth, who then resells "fractional interests in those life insurance policies, including the future death benefit proceeds, to investors," such as Vincent and O'Neal.  (Docket Entry No. 6 at 7).

Vincent and O'Neal allegedly purchased life settlements from Consolidated Wealth. (Docket Entry No. 12 at ¶ 9).  The contracts governing those purchases contained nearly identical arbitration provisions, which provide:

> [Defendant] agrees that, all claims, disputes, controversies, differences or other matters in question arising out of the relationship between [defendant] and [the contracting plaintiff] (and its officers, directors, agents and/or employees), whether related to this Note or otherwise shall be settled finally, completely and conclusively by arbitration in Houston, Harris County, Texas, in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "Rules"), by one or more arbitrators chosen in accordance with the Rules. Arbitration shall be initiated by written demand of the party seeking arbitration. A decision of the arbitrator or arbitrators shall be final, conclusive and binding on the parties and judgment may be entered thereon in the District Court of Harris County, Texas, to enforce such decision and the benefits thereof. Any arbitration held in accordance with this paragraph shall be private and confidential and no person shall be entitled to attend the hearings except the arbitrator(s), the stenographer, if one is requested, each party, attorneys for each party and/or representative designated by each party. The matters submitted for arbitration, the hearings and proceedings thereunder and the arbitration award shall be kept and maintained in the strictest of confidence and shall not be discussed, disclosed or communicated to any persons. On request of either party, the record of the proceeding shall be sealed and may not be disclosed except insofar, and only insofar, as may be necessary to enforce the award of the arbitrators and any judgment enforcing such award. The prevailing

party shall be entitled to recover reasonable and necessary attorney's fees and costs from the non-prevailing party.

(*Id.*).

Consolidated Wealth allegedly became insolvent and stopped paying the premiums on the underlying life-insurance policies.  (Docket Entry No. 6 at 7).  Vincent and O'Neal then brought federal securities-fraud claims against Consolidated Wealth in class-action arbitration.  (Docket Entry No. 12 at ¶ 10).  Consolidated Wealth sued, seeking a declaratory judgment under 28 U.S.C. § 2201 that the arbitration agreement bars class-action arbitration.  (Docket Entry No. 12 at ¶ 19).

The defendants moved to dismiss, arguing that the court lacks subject-matter jurisdiction, and that the arbitration agreement's language clearly delegates the class-arbitrability question to the arbitrator.  (Docket Entry No. 6).  Consolidated Wealth amended its complaint to allege that the arbitration's underlying claims arise under federal law.  (Docket Entry No. 12).  The defendants adopted their original motion to dismiss against the amended complaint, Consolidated Wealth responded, and the defendants replied.  (Docket Entry Nos. 14, 16, 17).  The court ordered the parties to submit additional briefs based on questions raised at oral argument, (Docket Entry No. 21), and the parties responded.  (Docket Entry Nos. 22, 26-1).

## II.    The Applicable Legal Standards

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Bloom v. Mem'l Hermann Hosp. Sys.*, 653 F. App'x 804, 805 (5th Cir. 2016).  "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the

record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *Gonzalez v. United States*, 851 F.3d 538, 543 (5th Cir. 2017).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Id.* When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012). The court has wide discretion to allow affidavits or other documents and to hold a limited evidentiary hearing to resolve disputed jurisdictional facts. *See Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). The court may consider matters outside the pleadings to resolve factual challenges to subject-matter jurisdiction without converting the motion to dismiss to one for summary judgment. *See Battaglia v. United States*, 495 F. App'x 440, 441 (5th Cir. 2012).

### B.    Arbitrability

Determining whether a suit must be arbitrated is typically a two-step process. Generally, issues of contract formation (including the existence of an arbitration agreement) are decided under state law and are gateway issues for the court. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The court also generally determines whether the scope of the arbitration agreement covers the claims before it. If the claims are within the scope of the arbitration clause, the court must compel arbitration. *Id.* But the parties may also agree to delegate that scope determination to the arbitrator by using a "delegation clause." *Id.*

When an arbitration agreement contains a delegation clause, the analysis changes.  The

Fifth Circuit clarified that:

> [e]nforcement of an arbitration agreement involves two analytical steps.  The first
> is contract formation—whether the parties entered into any arbitration agreement
> at all.  The second involves contract interpretation to determine whether this claim
> is covered by the arbitration agreement.  Ordinarily both steps are questions for the
> court.  *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).
> But where the arbitration agreement contains a delegation clause giving the
> arbitrator the primary power to rule on the arbitrability of a specific claim, the
> analysis changes.  *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942, 115
> S.Ct. 1920, 131 L.Ed.2d 985 (1995).

*Id.* at 201–02.

A delegation clause decisively "transfer[s] the court's power to decide arbitrability

questions to the arbitrator."  *Id.* at 202.  The clause "requires the court to refer a claim to arbitration

to allow the arbitrator to decide gateway arbitrability issues."  *Id.*  (citing *Rent-A-Ctr., W., Inc. v.

Jackson*, 561 U.S. 63, 68-69 (2010)).  Under this approach,

> if the party seeking arbitration points to a purported delegation clause, the court's
> analysis is limited.  It performs the first step—an analysis of contract formation—
> as it always does.  But the only question, after finding that there is in fact a valid
> agreement, is whether the purported delegation clause is in fact a delegation
> clause—that is, if it evinces an intent to have the arbitrator decide whether a given
> claim must be arbitrated.  If there is a delegation clause, the motion to compel
> arbitration should be granted in almost all cases.

*Id.*

## III.    Analysis

### A.    Subject-Matter Jurisdiction

The defendants argue that this court lacks subject-matter jurisdiction because neither the

Federal Arbitration Act nor the Declaratory Judgment Act provide an independent basis for federal

jurisdiction.  "As for jurisdiction over controversies touching arbitration, the [FAA] does nothing,

being something of an anomaly in the field of federal-court jurisdiction in bestowing no federal

jurisdiction but rather requiring an independent jurisdictional basis." *Quezada v. Bechtel OG & C Constr. Servs., Inc.*, 946 F.3d 837, 841 (5th Cir. 2020) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008) (quotations removed)).   "Such independent bases include diversity of citizenship under 28 U.S.C. § 1332 or federal question jurisdiction under 28 U.S.C. § 1331." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32 (1983)).   Similarly, the Declaratory Judgment Act does not independently confer subject-matter jurisdiction.   *See Vaden v. Discover Bank*, 556 U.S. 49, 70 n.19 (2009) ("[T]he Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts; it is 'procedural only.'") (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)).

Federal courts have subject-matter jurisdiction under the Declaratory Judgment Act "if there would be grounds for federal jurisdiction over a hypothetical suit that would have been brought absent the availability of declaratory relief." *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 938 (5th Cir. 2012) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672–74 (1950)).   Consolidated Wealth argues that the "hypothetical claim" the defendants would have brought is an action to compel arbitration under § 4 of the Federal Arbitration Act, which provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Suing to compel arbitration under § 4 requires that "one party to the agreement has failed, neglected or refused to arbitrate." *Carrington Capital Mgmt., LLC v. Spring Inv. Serv., Inc.*, 347 F. App'x 628, 630 (2d. Cir. 2009) (quoting *Jacobs v. USA Track & Field*, 374 F.3d 85, 88 (2d Cir.

2004)); *see also PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1066 (3d Cir. 1995) ("[A]n action to compel arbitration under the [Federal Arbitration Act] accrues only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute.").  "A party has refused to arbitrate if it commences litigation or is ordered to arbitrate the dispute [by the relevant arbitral authority] and fails to do so."  *Carrington*, 347 F. App'x at 630 (quotation removed).

The Fifth Circuit has held similar "refusal to arbitrate" language in the Labor Management Relations Act to require that "one of the parties must take the unequivocal position that it will not arbitrate."  *Indep. Coca-Cola Emps.' Union of Lake Charles v. Coca-Cola Bottling United, Inc.*, 114 F. App'x 137, 140 (5th Cir. 2004).  "Whether the employer has unequivocally refused to arbitrate turns on the particular facts of each case."  *Id.*  Courts have found that filing a petition to stay arbitration shows an unequivocal refusal to arbitrate.  *See id.* at 140 n.11 (collecting cases illustrating facts that show an unequivocal refusal to arbitrate); *Schweizer Aircraft Corp. v. Local 1752, Int'l Union, United Auto. Workers of Am.*, 29 F.3d 83, 87 (2d Cir. 1994) (filing a petition to stay arbitration was an unequivocal refusal to arbitrate).

Consolidated Wealth alleged that "[i]n their answering statement in the Arbitration, plaintiffs refuse to arbitrate class claims.  Plaintiffs have asked the arbitration panel to stay the Arbitration pending this Court's ruling on defendants' Motion to Dismiss."  (Docket Entry No. 12 at ¶ 11).  By answering with a refusal to arbitrate, and asking the arbitration panel to stay the arbitration, Consolidated Wealth has unequivocally refused to arbitrate.  This allows the defendants to bring an action to compel arbitration under § 4.

The court must then determine whether it has subject-matter jurisdiction over a hypothetical action to compel arbitration. "[T]he Supreme Court addressed the proper standard for determining federal jurisdiction when faced with a petition to compel arbitration under section 4 of the [Federal Arbitration Act], . . . adopt[ing] the so-called 'look through' approach." *Quezada*, 946 F.3d at 841 (citing *Vaden*, 556 U.S. at 49). "Under this approach, [a] federal court may look through a § 4 petition to determine whether it is predicated on an action that arises under federal law." *Id.* (quotations removed). Section 4 of the Federal Arbitration Act provides that a proponent of arbitration may petition for an order compelling arbitration in "any United States district court which, save for [the arbitration] agreement, would have jurisdiction under title 28." 9 U.S.C. § 4. "The phrase 'save for [the arbitration] agreement' indicates that the district court should assume the absence of the arbitration agreement and determine whether it 'would have jurisdiction under title 28' without it." *Vaden*, 556 U.S. at 62.

Consolidated Wealth's amended complaint alleges that the underlying dispute involves claims under SEC Rule 10b-5 and Section 20(a) of the Exchange Act of 1934. (Docket Entry No. 12 at ¶ 10). The underlying dispute arises under federal law and this court would have subject-matter jurisdiction under 28 U.S.C. § 1331 to hear those claims.

At oral argument, the defendants argued that the underlying action is based on state contract law because it would involve interpreting the arbitration agreement to determine whether it permits class arbitration. But § 4 provides for jurisdiction "save for [the arbitration] agreement," meaning the district court should assume the absence of the arbitration agreement when determining jurisdiction. *Vaden*, 556 U.S. at 62. Applying the "look through" approach to determine jurisdiction under § 4 of the Federal Arbitration Act, this court has subject-matter jurisdiction over Consolidated Wealth's declaratory judgment action.

**B.     The Arbitration Agreement**

The defendants argue that the agreement's broad arbitration language, which incorporates the AAA's Commercial Arbitration Rules, delegates threshold arbitrability questions to the arbitrator, including whether arbitration may proceed on a class-wide basis.  (Docket Entry No. 6 at 21).   Consolidated Wealth challenges only whether the agreement delegates the class-arbitrability question, not whether the agreement is valid.

Delegation clauses in arbitration agreements may be explicit or implicit.  An explicit delegation clause states that the arbitrator has the power to determine her own jurisdiction or to determine whether specific claims are arbitrable.  An implicit delegation clause incorporates some body of rules or law that, in turn, provides that the arbitrator has the power to determine his or her own jurisdiction or to rule on arbitrability in the first instance.  Incorporating the AAA rules by reference is the functional equivalent of agreeing to arbitrate arbitrability, at least in the bilateral arbitration context.  *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 553 (5th Cir. 2018); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).  The AAA rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Petrofac*, 687 F.3d at 675 (quoting the AAA rules) (internal quotation marks omitted). Incorporation "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.*  (citing cases from the First, Second, Eighth, Eleventh, and Federal Circuits).

**1.     The AAA Commercial Arbitration Rules**

The defendants argue that incorporating the AAA's Commercial Arbitration Rules, which include the AAA's Supplementary Rules that allow the arbitrator to determine class arbitrability, provides clear and unmistakable evidence that the parties intended the arbitrator to decide class

arbitrability.  The Fifth Circuit held in *20/20 Communications, Inc. v. Crawford*, 930 F.3d 715, 719 (5th Cir. 2019), that "the decision to arbitrate a dispute as a class, rather than on an individual basis," is a "threshold question of arbitrability."  "[C]lass arbitration is a 'gateway' issue that must be decided by courts, not arbitrators—absent clear and unmistakable language in the arbitration clause to the contrary."  *Id.* at 717.

Both parties argue that *20/20 Communications* supports their position.  In *20/20 Communications*, field managers who worked for 20/20 Communications, Inc., brought class-action claims against the company in arbitration.  *Id.*  20/20 Communications sought a declaratory judgment that class arbitrability was a gateway issue for the court, not the arbitrators, to decide. *Id.*  The arbitration agreement at issue incorporated the AAA's "National Rules for the Resolution of Employment Disputes . . . except where such rules are inconsistent with this Agreement."  *Id.* at 720 (alterations removed).  Two other provisions supported delegating arbitrability:

> If Employer and Employee disagree over issues concerning the formation or meaning of this Agreement, the arbitrator will hear and resolve these arbitrability issues.
>
> . . .
>
> Except as provided below, Employee and Employer, on behalf of their affiliates, successors, heirs, and assigns, both agree that all disputes and claims between them . . . shall be determined exclusively by final and binding arbitration.

*Id.*

> The agreement also included a class-action bar, which provided:
>
> [T]he parties agree that this Agreement prohibits the arbitrator from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means that an arbitrator will hear only individual claims and *does not have the authority to fashion a proceeding as a class or collective action* or to award relief to a group of employees in one proceeding, to the maximum extent permitted by law.

*Id.* at 719–20 (emphasis in original).

10

The Fifth Circuit held that "[d]ivorced from the other provisions of the arbitration agreement (most notably, the class arbitration bar), these three provisions could arguably be construed to authorize arbitrators to decide gateway issues of arbitrability such as class arbitration." *Id.* at 720. The court noted that "[t]he incorporation of AAA rules in the . . . cited provision is also arguably relevant here, considering that Rule 3 of the AAA Supplementary Rules for Class Arbitration provides that the arbitrator is empowered to determine class arbitrability." *Id.* But the provision barring class-action claims controlled. The Fifth Circuit held that "when we compare these provisions with the class arbitration bar at issue in this case, we conclude that none of them state with the requisite clear and unmistakable language that arbitrators, rather than courts, shall decide questions of class arbitrability." *Id.* at 721. The court explained that the class arbitration language was "at best, in substantial tension with—and in any event, not clear and unmistakable support for—the notion that the parties authorized the arbitrator to decide the gateway issue of class arbitration." *Id.* at 717. The court then stated that "[w]hether these provisions [other than the class-action bar], standing alone, clearly and unmistakably empower the arbitrator to decide questions of class arbitrability is a question we ultimately need not answer, however." *Id.* at 721.

Consolidated Wealth argues that the Fifth Circuit, in *20/20 Communications*, did not resolve whether incorporating the AAA's Commercial Arbitration Rules clearly and unmistakably delegates class arbitrability to the arbitrator. (Docket Entry No. 16 at 16). The defendants counter that earlier Fifth Circuit cases resolve the issue and *20/20 Communications* did not overrule precedent. (Docket Entry No. 17 at 12).

In *Arnold v. Homeaway, Inc.*, 890 F.3d at 553, and *Petrofac Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d at 675, the Fifth Circuit held that incorporating the AAA's

Commercial Arbitration Rules clearly and unmistakably demonstrates intent to delegate threshold arbitrability issues to the arbitrator.  The Fifth Circuit held in *20/20 Communications* that class arbitrability is a threshold issue, 930 F.3d at 719, and as a result, the defendants argue, incorporating the AAA Rules also delegates the class-arbitrability question to the arbitrator. District courts, before *20/20 Communications*, have also found that incorporating the AAA Rules clearly delegated class arbitrability.  *See Johns v. Pluckers, Inc.*, No. A-17-CA-553-SS, 2017 WL 4326359, at *4–5 (W.D. Tex. Sept. 29, 2017); *Langston v. Premier Directional Drilling, L.P.*, 203 F. Supp. 3d 777, 789 (S.D. Tex. 2016); *Gonzalez v. Brand Energy & Infrastructure Servs., Inc.*, No. H-12-1718, 2013 WL 1188136, at *5 (S.D. Tex. Mar. 20, 2013).

The defendants cite *Reed v. Florida Metropolitan University, Inc.*, 681 F.3d 630, 635–36 (5th Cir. 2012), *abrogated on other grounds by Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 n.1 (2013).  In *Reed*, the Fifth Circuit held that the parties' consent to the AAA Commercial Arbitration Rules, which included consent to the AAA's Supplementary Rules, constituted a clear agreement to allow the arbitrator to decide the issue of class arbitration.  *Id.* at 635–36.  The Fifth Circuit noted that the defendant had not submitted that question—who decides class arbitrability— to the district court.  *Id.* at 634.  The Fifth Circuit stated that the district court had correctly referred the class-arbitration issue to the arbitrator, and the court proceeded to determine whether the district court's confirmation of the arbitrator's award was proper.  *Id.* at 636.  The Fifth Circuit vacated the arbitral award because the arbitrator ordered the parties to submit to class arbitration without a contractual or legal basis.  *Id.* at 646.

The Supreme Court abrogated *Reed* in *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 n.1 (2013).  In *Oxford Health Plans*, the Supreme Court held that courts reviewing an

arbitrator's decision are limited to the question of "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.* at 569.

Consolidated Wealth argues that *Reed* does not end the inquiry, because the court's statement about incorporating the AAA Rules is dicta. The court in *Reed* addressed the incorporation question before deciding whether to vacate the arbitral award, a decision which was later abrogated by the Supreme Court. (Docket Entry No. 16 at 19–20). Consolidated Wealth also points to the Fifth Circuit's recent opinion in *20/20 Communications*, which treats the question as undecided rather than citing *Reed* as precedential. (*Id.* at 20).

Circuits have split on this issue. The Third, Sixth, and Eighth Circuits hold that incorporating the AAA Rules, by itself, does not clearly and unmistakably delegate class arbitrability to the arbitrator to decide. In *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 761 (3d Cir. 2016), the Third Circuit held that incorporating the AAA Rules "fail[ed] to satisfy the onerous burden of undoing the presumption in favor of judicial resolution of the question of class arbitrability." The court reached this conclusion because of the "daisy-chain of cross-references" required to reach the Supplementary Rules' class-action arbitration provisions. *Id.* The court also emphasized the "particular set of concerns that are absent in the bilateral context" that class-action arbitration implicates. *Id.* at 764. The Sixth and Eighth Circuits take the same approach. *See Catamaran Corp. v. Towncrest Pharm.*, 864 F.3d 966, 972–73 (8th Cir. 2017) (incorporating the AAA Rules by reference is "insufficient evidence that the parties intended for an arbitrator to decide the substantive question of class arbitration"); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) (an arbitration agreement that was silent on class arbitration and incorporated AAA Rules did not clearly delegate the class arbitrability question to the arbitrator).

13

The Second, Tenth, and Eleventh Circuits, on the other hand, hold that incorporating the AAA Rules suffices to delegate the class arbitrability question.  In *JPay, Inc. v. Kobel*, 904 F.3d 923, 936–37 (11th Cir. 2018), the arbitration agreement at issue included a delegation clause that expressly delegated "[t]he ability to arbitrate the dispute, claim or controversy," and also incorporated the AAA Rules.  The Eleventh Circuit held that the delegation clause and the incorporation of the AAA Rules independently sufficed to delegate the class-arbitrability question. *Id.* at 941.  The Eleventh Circuit split from the Third, Sixth, and Eighth Circuits because those courts, according to the Eleventh Circuit, "conflate[d] the 'who decides' question with the 'clause construction' question of class availability by analyzing the former question with reasoning developed in the context of the latter."  *Id.*  The Eleventh Circuit also distinguished *JPay* from the other circuit cases because "[n]one faced the language [in *JPay*]: the incorporation of AAA rules <u>and</u> an express delegation clause."  *Id.* (emphasis in original).

The Second and Tenth Circuits have similarly held that incorporating the AAA Rules is enough to delegate class arbitrability.  In *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 395 (2d Cir. 2018), entry-level financial advisors sued Wells Fargo in class arbitration.  Wells Fargo petitioned the district court to compel bilateral arbitration, which the district court denied. *Id.*  On appeal, the Second Circuit held that incorporating the AAA Rules serves as clear and unmistakable evidence of the parties' intent to delegate class arbitrability to the arbitrator.  *Id.* at 396.

The court rejected the common criticisms of this approach.  First, the court explained that there was no "string of inferences" required to arrive at the Supplemental Rules for Class Arbitrations.  *Id.* at 397.  Incorporating the AAA Rules into the employees' contracts, the court stated, "made them as much a part of the contract[s] as any other provision," and those rules made

14

clear that they would apply "in the form obtaining at the time [of] the demand for arbitration." *Id.*
Second, the court stated that the contract's "bilateral terminology" of "you and Wells Fargo" did
not "reveal any intent to prevent an arbitrator from deciding" class arbitrability because these
references are expected in an employment contract. *Id.* at 397–98.   And third, the court stated that
"the particular set of concerns that are absent in the bilateral context" relate to whether class
arbitrability is the kind of question that parties would "likely have expected a court to have
decided" as a gateway matter. *Id.* at 398–99.

The Tenth Circuit agreed.  *See Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1245 (10th Cir.
2018) (incorporating the AAA Rules delegated the class arbitrability question, and the fundamental
differences between bilateral and classwide arbitration are "irrelevant" in the analysis).  The Fifth
Circuit has similarly disapproved of courts "bootstrap[ping] a preliminary proceeding into judicial
review of an arbitration award that does not yet exist."  *See Robinson v. J & K Admin. Mgmt.
Servs., Inc.*, 817 F.3d 193, 197–98 (5th Cir. 2016).

After the parties in this case briefed the issue and presented oral argument, the Fifth Circuit
issued *Sun Coast Resources, Inc. v. Conrad*, 956 F.3d 335 (5th Cir. 2020).  In *Sun Coast*, an
employee brought an FLSA collective action in arbitration against his employer, and the arbitrator
determined that the arbitration agreement, which incorporated the AAA Rules, allowed collective
actions.  *Id.* at 336–37.  The employer asked the district court to vacate the award, but the district
court declined.  *Id.*  The Fifth Circuit affirmed, applying the deferential standard for vacating an
arbitral award and holding that the arbitrator "interpreted the agreement."  *Id.* at 337–38.  The court
then addressed the employer's argument that deference is inappropriate because class arbitrability
is a "gateway issue for courts" absent clear evidence to the contrary.  *Id.* at 338.  The court held
that it "ultimately need not reach the issue, because [the employer] forfeited it" by not presenting

it to the arbitrator.  *Id.*  Before holding that the employer forfeited the issue, however, the Fifth Circuit stated that "[b]y various indications, the arbitration agreement here appears to assign the question of class arbitrability to the arbitrator."  *Id.*  The court noted that the agreement incorporated the AAA Rules, stating that along with the agreement's broad arbitration language, "[t]hose provisions strongly indicate that the parties bargained for the arbitrator to decide class arbitrability."  *Id.*  The Fifth Circuit cited *Reed* for that case's statement that "consenting to the AAA Supplementary Rules 'constitutes a clear agreement to allow the arbitrator to decide whether the party's agreement provides for class arbitration.'"  *Id.* (citing *Reed*, 681 F.3d at 635–36).

In light of *Sun Coast* and *Reed*, the agreement's incorporation of the AAA Rules strongly indicates that the parties intended to delegate class arbitrability to the arbitrator to decide.

### 2.    The Parties' Agreement

Vincent and O'Neal also argue that the agreement's language—requiring arbitration of "all claims, disputes, controversies, differences or other matters in question arising out of the relationship between" the parties—is broad and supports delegating the question of class arbitrability to the arbitrator.  (Docket Entry No. 6 at 27).  Consolidated Wealth argues that the agreement's language is narrow.  (Docket Entry No. 16 at 14).

The Fifth Circuit has held that when an agreement includes "broad coverage language, such as a contract clause submitting 'all disputes, claims, or controversies arising from or relating to' the agreement to arbitration, then the availability of class or collective arbitration is an issue arising out of the agreement that should be determined by the arbitrator."  *Robinson*, 817 F.3d at 196.  In *Robinson v. J & K Administrative Management Services, Inc.*, the Fifth Circuit reviewed an arbitration agreement to determine whether it clearly delegated class arbitrability to the arbitrator.  *Id.* at 197–98.  The arbitration agreement included a delegation clause that subjected "claims

16

challenging the validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of the Agreement to a particular dispute or claim" to arbitration. *Id.* at 197. The party challenging delegation, J & K, argued that because the clause was silent as to class arbitration, it did not delegate the issue. *Id.* J & K also argued that the language referred only to disputes between the company and the employee, so it could not apply to other class members. *Id.* The Fifth Circuit held that the language was similar to broad contract language that the court had found sufficient to delegate arbitrability issues and affirmed the district court's ruling that the arbitrator should decide whether class arbitration was available. *Id.* at 198. The Fifth Circuit rejected J & K's arguments that the clause's silence as to class arbitration and its reference to only the company and the employee prevented delegation. *Id.* The court explained:

> These arguments, however, are a misguided attempt to bootstrap a preliminary proceeding into judicial review of an arbitration award that does not yet exist. J & K may be right that the agreement does not allow class or collective arbitration, but that is not the issue before the court. The issue is who decides if the arbitration agreement permits class or collective procedures.

*Id.* at 197–98.

The language in the agreement here is broad, although it is not part of a separate delegation clause, as was true in *Robinson*. The language requires that "all claims, disputes, controversies, differences or other matters in question arising out of the relationship between [defendant] and [the contracting plaintiff] (and its officers, directors, agents and/or employees), whether related to this Note or otherwise shall be settled finally, completely and conclusively by arbitration." (Docket Entry No. 12 at ¶ 9).

Consolidated Wealth argues that this is a narrow provision because it encompasses only those claims arising out of the relationship between the parties, not all claims related to the investment. (Docket Entry No. 16 at 14). This language is broad because the relationship between

17

the parties includes their investment, as well as the arbitration agreement itself.  The arbitration provision also covers disputes "whether related to this Note or otherwise."  (Docket Entry No. 12 at ¶ 9).

Consolidated Wealth also argues that the agreement's silence on class arbitration, as well as its reference to only the defendants and Consolidated Wealth, show that the arbitration provision is too narrow to delegate class arbitrability to the arbitrator to decide.  The Fifth Circuit addressed the same arguments in *Robinson* and held that those aspects of the arbitration agreement were probative of whether the agreement allows class arbitration, and not whether the parties clearly delegated the issue to the arbitrator.  *Robinson*, 817 F.3d at 197–98.

The broad language here is different from the language in *Robinson*, because it is not an express delegation clause within an arbitration agreement.  But it is similar to the language the *Robinson* court relied on in its holding.  In *Robinson*, the Fifth Circuit cited *Pedcor Management Co. Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.*, 343 F.3d 355 (5th Cir. 2003), stating:

> [*Pedcor*] held that when an agreement includes broad coverage language, such as a contract clause submitting "all disputes, claims, or controversies arising from or relating to" the agreement to arbitration, then the availability of class or collective arbitration is an issue arising out of the agreement that should be determined by the arbitrator.

*Robinson*, 817 F.3d at 196 (citing *Pedcor Mgmt.*, 343 F.3d at 359).

The *Robinson* court compared the language of the delegation clause at issue to the broad coverage language in *Pedcor* and held that the delegation clause delegated the class-arbitrability question to the arbitrator.  *Id.* at 198.  While Consolidated Wealth notes that the *Pedcor* court relied on a plurality opinion as if it were the opinion of the Court, that does not change that the *Robinson*

court relied on the language from *Pedcor* in holding that the broad contract language at issue delegated class arbitrability.

Here, the agreement contains broad arbitration language.  It submits "all claims, disputes, controversies, differences or other matters in question arising out of the relationship between [defendant] and [the contracting plaintiff] (and its officers, directors, agents and/or employees), whether related to this Note or otherwise," to arbitration.  Whether the agreement allows classwide arbitration is undoubtedly a "dispute . . . arising out of the relationship between [the parties] . . . whether related to this Note or otherwise."   The broad language here includes disputes over whether class arbitration is available, and also strongly indicates that the parties intended to delegate class arbitrability.

### 3.    Conflicting Provisions

Consolidated Wealth also points to provisions of the agreement that require strict confidentiality and restrict the number of attendees to the arbitration, features that Consolidated Wealth argues characterize "individualized arbitration."  (Docket Entry No. 16 at 14).  It argues that these provisions conflict with the AAA Supplementary Rules on class-action arbitration, showing that the parties did not intend to delegate class arbitrability.

Consolidated Wealth cites *20/20 Communications* to support its argument.  The conflicting provision in *20/20 Communications* completely barred class-action arbitration.  930 F.3d at 719–20.  It provided:

> "[T]he parties agree that this Agreement prohibits the arbitrator from consolidating the claims of others into one proceeding, to the maximum extent permitted by law. This means that an arbitrator will hear only individual claims and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group of employees in one proceeding, to the maximum extent permitted by law."

*Id.*

19

The Fifth Circuit held that the provision "operates not only to bar class arbitrations to the maximum extent permitted by law, but also to foreclose any suggestion that the parties meant to disrupt the presumption that questions of class arbitration are decided by courts rather than arbitrators." *Id.* at 720. The court continued that "it is difficult for us to imagine why parties would categorically prohibit class arbitrations to the maximum extent permitted by law, only to then take the time and effort to vest the arbitrator with the authority to decide whether class arbitrations shall be available." *Id.*

Consolidated Wealth points to Rule 9 of the AAA's Supplementary Rules,[1] which states: "The presumption of privacy and confidentiality in arbitration proceedings shall not apply in class arbitrations. All class arbitration hearings and filings may be made public, subject to the authority of the arbitrator to provide otherwise in special circumstances." Subpart (b) of Rule 9 provides that:

> The AAA shall maintain on its website a Class Arbitration Docket of arbitrations filed as class arbitrations. The Class Arbitration Docket will provide certain information about the arbitration to the extent known to the AAA, including:
>
> (1) a copy of the demand for arbitration;
>
> (2) the identities of the parties;
>
> (3) the names and contact information of counsel for each party;
>
> (4) a list of awards made in the arbitration by the arbitrator; and
>
> (5) the date, time and place of any scheduled hearings.

(Docket Entry No. 16 at 15).

Consolidated Wealth argues that in contrast, their agreement requires that:

---

[1] *Supplementary Rules for Class Arbitrations*, AMERICAN ARBITRATION ASSOCIATION, 7 (2003) *available at* https://www.adr.org/sites/default/files/Supplementary_Rules_for_Class_Arbitrations.pdf (last accessed on July 3, 2020).

> The matters submitted for arbitration, the hearings and proceedings thereunder and the arbitration award shall be kept and maintained in the strictest of confidence and shall not be discussed, disclosed or communicated to any persons. On request of either party, the record of the proceeding shall be sealed and may not be disclosed except insofar, and only insofar, as may be necessary to enforce the award of the arbitrators and any judgment enforcing such award.

(Docket Entry No. 12 at ¶ 9).

Consolidated Wealth argues that the privacy requirements in the agreement directly conflict with the AAA Supplementary Rules governing class action arbitrations, and that, as in *20/20 Communications*, this conflict precludes finding a clear intent to delegate class arbitrability.

The conflicting provision here does not categorically bar class-action arbitrations. The Supplementary Rules resolve this inconsistency by providing that "[t]he arbitrator shall have the authority to resolve any inconsistency between any agreement of the parties and these Supplementary Rules."[2]  While this inconsistency may carry weight in deciding whether the agreement allows class-action arbitration, that is not the question here.

The parties' agreement includes broad arbitration language that covers disputes over arbitrability and that incorporates the AAA Rules.  Together, this is clear and unmistakable evidence that the parties intended the arbitrator to decide whether class arbitration is available. The defendants' motion to dismiss in favor of arbitration is granted.

---

[2] *Supplementary Rules* at 3.

**IV.     Conclusion**

This result is in some ways a prediction—a guess—as to how a future and higher court will ultimately resolve the issue.  Although the result binds no one but the parties, it at least resolves the threshold issue in a way that allows this case to proceed as the case law continues to develop. The defendants' motion to dismiss, (Docket Entry No. 6), is granted.  This case is stayed and administratively closed pending the arbitration decisions.

SIGNED on July 6, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge